**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

| | |
|---|---|
| TIGER WORKU, | Case No. 26-cv-131 |
| Plaintiff, | |
| v. | **COMPLAINT AND** |
| TESLA, INC. | **JURY DEMAND** |
| Defendant. | |

Plaintiff, Tiger Worku, for his causes of action against the above-named Defendant, states and alleges as follows:

## THE PARTIES

1. Plaintiff Tiger Worku is a citizen of the United States, and at all times relevant herein resided at 2425 E Franklin Ave, Apt 206, Minneapolis, MN 55406, County of Hennepin.

2. Defendant Tesla, Inc. is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 1 Tesla Road, Austin, Texas 78725. Defendant has a registered agent for service in Minnesota of CT Corporation Services, 1010 Dale Street North, Saint Paul, MN 55117–5603.

## JURISDICTION

3. Jurisdiction is founded upon 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and because the amount in controversy exceeds seventy-five thousand ($75,000) Dollars, exclusive of costs and interest.

1

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue in this District is appropriate because the Defendant is subject to personal jurisdiction in this district and maintains contacts in this district sufficient to subject it to personal jurisdiction, and because a substantial part of the events complained of arose in this District.

## GENERAL ALLEGATIONS

5. On August 22, 2025, Plaintiff brought his Tesla Model 3 to the Tesla charging station located in the parking lot of the Target Store at 1300 University Avenue West, St. Paul, MN 55104 to charge his Tesla.

6. When he grabbed the charging connector to plug it into his vehicle, he received an electrical shock that has resulted in injuries to his mind and body. Initial diagnosis was electrocution and immediate symptoms included twitching/muscle contractions in his pectoralis muscles, heart palpitations, paresthesia of his right arm and some numbness of his left arm, J-point elevation in V3, and reactive white count elevation. Long term complications include heart rhythm issues, cognitive issues, and psychological sequala. Treatment and diagnosis continues.

## FIRST CAUSE OF ACTION
## (NEGLIGENCE)

7. Plaintiff repeats and alleges all preceding paragraphs as if fully set forth herein.

8. At all times material herein, Plaintiff was using the charger station as directed and in the manner that was foreseeable to, and desired by, Defendant.

9. Defendant owed Plaintiff a duty of reasonable care to keep the charging station in a reasonably safe condition free from defects that would allow him to use the charging station and not be injured by it.

10. Defendant also owed Plaintiff a duty of reasonable care to inspect and maintain the charging station to ensure that it was reasonably safe to be used by people charging their vehicles, including Plaintiff, and to reasonably ensure that Plaintiff was not exposed to unreasonable risks of harm.

11. Defendant breached these duties of reasonable care by allowing the charging station to be in such a defective and/or unsafe condition that it caused the people, including Plaintiff, to be electrocuted by the charging station.

12. Defendant further breached its duty of reasonable care to the Plaintiff by failing to warn the Plaintiff that use of the charging station could cause execution or otherwise cause injury. Defendant may have also been negligent in other ways not currently known to Plaintiff.

13. That as a direct and proximate result of the Defendant's acts, omissions, and negligence, as set forth herein and otherwise, Plaintiff was electrocuted and suffered injury.

14. That as a further direct and proximate result of the Defendant's acts, omissions, and negligence, as set forth herein and otherwise, Plaintiff has suffered, and will continue to suffer, past and future pain, suffering, disfigurement, permanent injury, medical expenses, loss of enjoyment of life, embarrassment, anguish, humiliation, and

emotional distress, in an amount greater than Seventy-Five Thousand Dollars ($75,000.00).

## SECOND CAUSE OF ACTION
## (PREMISES LIABILITY)

15. Plaintiff repeats and alleges all preceding paragraphs as if fully set forth herein.

16. At all times hereinafter mentioned, Defendant so negligently, carelessly and without due regard or concern for the life and safety of the Plaintiff, did so own, maintain, lease, operate, control, repair, supervise and/or occupy the subject property on which the charging station was located in such a manner so as to create, cause, allow, contribute to or assist in the creation of a dangerous and defective condition of the premises, which existed upon such premises in sufficient time for the Defendant to have actual and/or constructive notice of such condition, and for the Defendant to correct or warn Plaintiff of the existence of such condition, which the Defendant negligently and carelessly failed and neglected to do.

17. Such conditions include those stated above in Court One and throughout this Complaint.

18. That as a direct and proximate result of the defective and dangerous condition of the property and the negligence of the Defendant, Plaintiff was electrocuted.

19. That as a further direct and proximate result of the Defendant's acts, omissions, and negligence and failure to maintain, operate, control, repair, supervise and/or occupy the subject property on which the charging station was located in a

reasonably safe manner, as set forth herein and otherwise, Plaintiff has suffered, and will continue to suffer, past and future pain, suffering, disfigurement, permanent injury, medical expenses, loss of enjoyment of life, embarrassment, anguish, humiliation, and emotional distress, in an amount greater than Seventy-Five Thousand Dollars ($75,000.00).

## THIRD CAUSE OF ACTION
### (STRICT PRODUCTS LIABILITY – Design Defect)

20. Plaintiff repeats and alleges all preceding paragraphs as if fully set forth herein.

21. Defendant had a duty to place into the stream of commerce, manufacture, distribute, and make available to Plaintiff for use, the subject charging station so that it was neither defective nor unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, and made available for.

22. On and prior to August 22, 2025, Defendant was engaged in the business of designing, manufacturing, marketing, distributing, selling, and making available to people wanting to charge their Tesla vehicles, including Plaintiff, charging stations, including the subject charging station located at the Saint Paul, MN, University Avenue Target Store parking lot.

23. Defendant expected the subject charging station to reach, and it did in fact reach, Plaintiff for use at the Saint Paul, MN, University Avenue Target Store parking lot without substantial change in its condition.

24. At the time the subject charging station left the possession Defendant, was put into the stream of commerce, and use made available for use by Plaintiff, it was in an unreasonably dangerous or defective condition in that it could, and did, cause electrocution to persons, including Plaintiff, who used it as intended.

25. These defects include, but are not limited to, the following:

(a) the charging station was not reasonably safe as intended to be used;

(b) the charging station had an inadequate design for the purpose for which it was intended;

(c) The charging station was unreasonably dangerous because it was not fit for its purpose;

(d) the charging station contained unreasonably dangerous design defects, including that it allowed for a user to be electrocuted when used as intended;

(e) the charging station's defective design resulted in a charging station that had risks that exceeded its benefits;

(f) the charging station was not appropriately or adequately tested before its distribution; and

(g) the charging station was in other ways defective.

26. On information and belief, at the time of Defendant's initial design, manufacture, marketing and sale of the charging station, and at the time it was made available for use by the Plaintiff, a safer, feasible, alternative safer design for the charging station was known and available to Defendant.

27. At the time of, and prior to, Defendant's initial design, manufacture, marketing and sale of the charging station, and at the time it was made available for use by the Plaintiff, including prior to the time of Plaintiff's injury, Defendant had the ability to eliminate the unsafe character of the charging station without impairing its usefulness.

28. The subject charging station was, therefore, defective in design in that, when it left Defendant's hands, the foreseeable risk of harm from the product exceeded or outweighed the benefit or utility of its particular design, and/or it was more dangerous than an ordinary consumer or user would expect.

29. As a direct and proximate result of the charging station's defective design, Plaintiff has suffered, and will continue to suffer, past and future pain, suffering, disfigurement, permanent injury, medical expenses, loss of enjoyment of life, embarrassment, anguish, humiliation, and emotional distress, in an amount greater than Seventy-Five Thousand Dollars ($75,000.00).

## FOURTH CAUSE OF ACTION
### (Strict Products Liability – Manufacturing Defect)

30. Plaintiff repeats and alleges all preceding paragraphs as if fully set forth herein.

31. Defendant expected the subject charging station to reach, and it did in fact reach Plaintiff for use at the Saint Paul, MN, University Avenue Target Store parking lot without substantial change in its condition.

32. At all times relevant hereto, Plaintiff used the subject charging station for its intended or a reasonably foreseeable purpose.

33.   At all times relevant hereto, the subject charging station was dangerous, unsafe, and defective in manufacture. Such defects included, but were not limited to, that the charging station as manufactured was unreasonably dangerous because it was not fit for its purpose and could electrocute, and did in fact electrocute, Plaintiff.

34.   Plaintiff is informed and believes, and thereupon alleges, that the subject charging station was defectively manufactured because it differed from the manufacturer's design and specifications, and/or from typical units of the same product line.

35.   As a direct and proximate result of the manufacturing defect in the charging station, Plaintiff has suffered, and will continue to suffer, past and future pain, suffering, disfigurement, permanent injury, medical expenses, loss of enjoyment of life, embarrassment, anguish, humiliation, and emotional distress, in an amount greater than Seventy-Five Thousand Dollars ($75,000.00).

## FIFTH CAUSE OF ACTION
### (Strict Products Liability – Failure to Warn)

36.   Plaintiff repeats and alleges all preceding paragraphs as if fully set forth herein.

37.   The subject charging station was defective and unreasonably dangerous when it left the Defendant's possession in that it contained no warnings or it contained warnings insufficient—and no, or insufficient, warnings were posted at the Saint Paul, MN, University Avenue Target Store parking lot—to alert the Plaintiff to the dangerous risks associated with its use when used for its intended purpose and/or a reasonably

8

foreseeable purpose. The dangers and risks included, but were not limited to, that the charging station could cause the user to be electrocuted when used as intended.

38. At all times relevant hereto, Plaintiff used the charging station for its intended purpose and/or a reasonably foreseeable purpose, as directed and instructed by Defendant.

39. Defendant knew, or should have known, of potential risks associated with its use before, at, and after the time of manufacture, distribution, and sale of the charging station; before, and at the time it made the charging station available for Plaintiff's use; and at the time Plaintiff used the charging station. Defendant knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

40. At all times relevant hereto, Defendant knew or should have known that the design of the charging station and its warnings were likely to be dangerous when used for its intended purpose or in a reasonably foreseeable manner as directed by and instructed by the Defendant.

41. Defendant had a continuing duty to warn purchasers and users of the charging station, including Plaintiff, of the potential risks associated with use of it.

42. The warnings and instructions provided with the charging station—and those posted Saint Paul, MN, University Avenue Target Store parking lot—did not adequately warn of the potential risks of use of the charging station which risks were known or knowable to Defendant.

43. As a direct and proximate result of Defendant's failure to warn, Plaintiff has suffered, and will continue to suffer, past and future pain, suffering, disfigurement, permanent injury, medical expenses, loss of enjoyment of life, embarrassment, anguish, humiliation, and emotional distress, in an amount greater than Seventy-Five Thousand Dollars ($75,000.00).

## PRAYER FOR RELIEF

Plaintiff prays that judgment in an amount of not less than Seventy-Five Thousand Dollars ($75,000.00) be entered against Defendant as follows:

a. on all causes of action of this Complaint for all injuries and losses sustained;

b. the costs and reasonable attorney's fees of this action;

c. pre-judgment and post-judgment interest; and

d. other such relief as the Court finds just.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all causes so triable.

Date: January 9, 2026                    **BENNEROTTE & ASSOCIATES, PA**

　　　　_s/ Vincent J. Moccio_
Vincent J. Moccio, Esq. (MN # 0184640)

3085 Justice Way, Suite 200
Eagan, MN 55121
Ph: 651-842-9257
Fax: 651-288-0680
Email: vincent@bennerotte.com